UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES WALTER ERVIN,                          Case No. 11-13776

            Plaintiff,                          Lawrence P. Zatkoff
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 11, 16)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On August 30, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Lawrence P. Zatkoff referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance and supplemental security income benefits. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkt. 11, 16).

    B.   <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on September 21, 2007, alleging that he

became unable to work on November 2, 2004. (Dkt. 8-5, Pg ID 125-130). The

claim was initially disapproved by the Commissioner on January 11, 2008. (Dkt.

8-4, Pg ID 89-96). Plaintiff requested a hearing and on October 19, 2009, plaintiff

appeared with counsel before Administrative Law Judge (ALJ) Peter N. Dowd,

who considered the case *de novo*. In a decision dated November 6, 2009, the ALJ

found that plaintiff was not disabled. (Dkt. 8-2, Pg ID 35-45). Plaintiff requested

a review of this decision on December 30, 2011. (Dkt. 8-2, Pg ID 33). The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits[1] (Dkt. 8-2, Pg ID 25-26), the Appeals Council, on June 30,

2011, denied plaintiff's request for review. (Dkt. 8-2, Pg ID 22-24); *Wilson v.

Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   <u>ALJ Findings</u>

Plaintiff was 41 years of age at the time of the most recent administrative

hearing.  (Dkt. 8-5, Pg ID 125).  Plaintiff's relevant work history included

approximately 18 years as a grocery store cashier.  (Dkt. 8-6, Pg ID 144).  In

denying plaintiff's claims, defendant Commissioner considered hearing loss in

both ears, heart disease, and carpal tunnel as possible bases of disability.  (Dkt. 8-

6, Pg ID 143).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

November 2, 2004.  (Dkt. 8-2, Pg ID 41).  At step two, the ALJ found that

plaintiff's (1) complete hearing loss of the left ear and some hearing loss in the

right ear; (2) Wolff-Parkinson-White Syndrome; (3) obesity with hypertension;

and were "severe" within the meaning of the second sequential step.  *Id*.  At step

three, the ALJ found no evidence that plaintiff's combination of impairments met

or equaled one of the listings in the regulations.  (Dkt. 8-2, Pg ID 42).  At step

four, the ALJ found that plaintiff could  perform his previous work as a

disbursement clerk and was, therefore, not disabled.  (Dkt. 8-2, Pg ID 43).

### B.   <u>Plaintiff's Claims of Error</u>

According to plaintiff, the ALJ's hypothetical question posed to the

Report and Recommendation
Cross-Motions for Summary Judgment
*Ervin v. Comm'r*; Case No. 11-13776

vocational expert was inaccurate and incomplete for several reasons.   First, the ALJ acknowledged that the plaintiff's hearing loss is severe, and yet minimized it in his description and in the hypothetical question.  The ALJ also does not include plaintiff's inability to perform jobs which require telephone use, intercom use, dealing with the public or communications with co-employees or supervisors. The only concession the ALJ made for plaintiff's hearing loss is that he "must avoid concentrated exposure to noise" or "moving industrial equipment."  According to plaintiff, this is inadequate to protect what little hearing plaintiff has in his right ear.  Because of his severe hearing loss, plaintiff would have to have a job with limited or no contact with the general public and he would be unable to perform jobs that required telephone responsibilities.

Plaintiff also contends that the ALJ's hypothetical question does not adequately provide for his documented bilateral carpal tunnel syndrome.  The ALJ's hypothetical question asks the vocational expert to consider jobs where plaintiff "can use his hands for frequent, but not constant handling, fingering and feeling."  The consultive examiner, Dr. Raffee, M.D., noted that plaintiff took Motrin "to help relieve some of the discomfort and pain and tingling."  Dr. Raffee also noted that plaintiff tends to drop things frequently, is unable to hold onto a coffee cup and was unable to pick up a coin.  Plaintiff had decreased grip strength bilaterally, with a positive Tinel and Phalen's test.  (*See* Exhibit 4F).  Thus,

Report and Recommendation
Cross-Motions for Summary Judgment
*Ervin v. Comm'r*; Case No. 11-13776

plaintiff argues that his residual functional capacity assessment should have included limitations to no more than occasional handling, fingering and feeling with an avoidance of forceful grasping and gripping, avoidance of work requiring fine dexterity and the avoidance of vibratory tools. Plaintiff also points out that the consultive examiner did not offer any guidance as to his residual functional capacity, and the physical residual functional capacity assessment found at Exhibit 6F was not even filled out for manipulative limitations. The form also does not appear to be filled out by a medical doctor. Plaintiff argues that where neither the ALJ nor the DDS consultant considered the effects of plaintiff's obesity on his carpal tunnel syndrome, his COPD, his Wolffe-Parkinson-White Syndrome or his hypertension the ALJ is in violation of SSR 02-1p. *Solsbee v. Astrue*, 737 F. Supp. 2d 102 (W.D.N.Y. 2010).

Plaintiff also maintains that the ALJ's evaluation of his credibility is not well-reasoned, or supported by substantial evidence. The ALJ seems to limit the plaintiff's credibility because he attempts to lead a normal life. While the ALJ lists plaintiff's daily activities, he neglects to point out that plaintiff testified that his mother does most of the cooking and household chores, that his mother helps with the care of the pets, that the mowing of the lawn is done with a riding mower and that he requires closed captions to watch television. It is accepted law that an ALJ "may not penalize a Plaintiff for attempting to lead a normal life in spite of

2:11-cv-13776-LPZ-MJH   Doc # 17   Filed 08/30/12   Pg 6 of 25   Pg ID 317

his disability." *Mendoza v. Astrue*, Civil No. 08-3090-HU (D. Ore. Sept. 30,

2009); *Sucharski v. Astrue*, Case No. 089-C-2484 (E.D. Wis. 2009); 2009 U.S.

Dist. Lexis 95878; 146 SSRS577.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner contends that substantial evidence supports the ALJ's

finding that plaintiff was not disabled because he could perform his past relevant

work.  The ALJ accommodated the limiting effects of his impairments.  The

limitation to light work significantly restricted the exertional demands of the work

plaintiff could do; it limited plaintiff to work involving lifting no more than 20

pounds at a time and no more than 10 pounds frequently. 20 C.F.R. § 404.1567(b).

The Commissioner also points out that the ALJ did not stop there.  He also

included a series of postural limitations.  He specified that any work plaintiff

could do should allow for a sit/stand option and require no more than occasional

stair climbing, balancing, stooping, kneeling, crouching, and crawling; and no

more than frequent—and not constant—use of plaintiff's hands for handling,

fingering, and feeling.  (Tr. 21).  Additionally, the ALJ imposed environmental

restrictions. He specified that plaintiff could not work around concentrated

exposure to noise, unprotected heights, or moving industrial machinery.

According to the Commissioner, these exertional, postural, and

environmental limitations accommodate all of the functional limitations resulting

Report and Recommendation
Cross-Motions for Summary Judgment
*Ervin v. Comm'r*; Case No. 11-13776

from plaintiff's impairments.  The exertional limitations and restrictions on the use

of plaintiff's hands address plaintiff's complaints of pain and tendency to drop

objects because of carpal tunnel syndrome.  The limitation to light work;

restriction to no more than occasional stair climbing, balancing, stooping,

kneeling, crouching and crawling; and the restriction from concentrated exposure

to unprotected heights and moving machinery addresses both any difficulties in

ambulation resulting from plaintiff's obesity (which Dr. Raffee described as mild

(Tr. 191)) as well as the dizziness plaintiff testified he experienced during

episodes of Wolff- Parkinson-White syndrome-related heart palpitations.  Further,

the Commissioner argues that, by restricting plaintiff to work free of concentrated

noise and moving industrial machinery, the ALJ accommodated plaintiff's hearing

loss.  The Commissioner also points out that no treating, examining, or consulting

physician opined that plaintiff was disabled or imposed greater restrictions than

those the ALJ incorporated into his RFC finding.  While Dr. Raffee confirmed the

diagnosis of carpal tunnel syndrome by noting a positive Phalen's test (Tr. 191),

no objective medical record evidence indicated that this resulted in any significant

functional limitations.  In fact, Dr. Raffee found Plaintiff had near-normal 4/5 grip

strength.  (Tr. 191).  According to the Commissioner, the record contains no

medical documentation of treatment for carpal tunnel syndrome, nor any testing to

determine whether it was particularly advanced or severe.   Plaintiff's description

of his treatment suggests his carpal tunnel syndrome was mild. He told the ALJ that the doctor who diagnosed it prescribed Motrin and did not suggest surgery. (Tr. 45). This conservative treatment continued through the date of the hearing. In fact, plaintiff testified that his current physician "just writes my medication and sends me on my way." (Tr. 45).

According to the Commissioner, the medical record similarly indicates that the exertional, environmental, and postural limitations the ALJ imposed adequately addressed plaintiff's symptoms from Wolff-Parkinson-White syndrome. Plaintiff explained that he got dizzy when he experienced heart palpitations. (Tr. 42). But the scant medical documents in the record do not depict much active treatment for this disorder. Plaintiff testified that he took medication for several years and then stopped in 2006. (Tr. 41). Few record notes indicate that plaintiff complained of dizzy spells. While plaintiff complained at an October 1, 2007, doctor's visit that he had experienced dizziness (Tr. 173), at a follow up visit 11 days later he reported no dizziness. (Tr. 170). The overwhelming majority of treatment notes either state that plaintiff did not complain of dizziness or make no mention of it at all. (Tr. 156, 162, 177-78, 179-80, 182-83, 212-13, 214-15). At these visits, examination was noted to be normal. *Id*. Documentation from Dr. Lafia, plaintiff's cardiologist, is similarly scant, but progress notes from the only two visits documented indicate that in June

8

2002, plaintiff was doing well and had no cardiac symptomatology (Tr. 156), and that in February 2005, plaintiff reported he was doing well and denied visual disturbances, chest pain, and shortness of breath. (Tr. 162). The Commissioner contends that plaintiff's minimal and conservative treatment for both carpal tunnel syndrome and Wolff-Parkinson-White syndrome properly informed the ALJ's determination that these impairments were not work-preclusive.

Similarly, while plaintiff was deaf in one hear and hard of hearing in the other, the Commissioner asserts that the record makes clear that plaintiff retained sufficient hearing to sustain employment. While consulting physician Dr. Marchetta described plaintiff's hearing loss as "profound" (Tr. 194), he also concluded from his examination – which included a hearing test (Tr. 193) – that plaintiff rarely or never misunderstood words in conversational speech. (Tr. 195). The Commissioner points out that the hearing testimony supported Dr. Marchetta's finding, given that plaintiff told the ALJ that he owned and used a cell phone. (Tr. 32). While he said he had to turn the volume up to use it, he regularly used his cell phone to speak to his daughter. (Tr. 51). At the hearing, plaintiff wore an amplifier and the hearing transcript makes clear that plaintiff had little if any difficulty hearing and understanding the ALJ and his attorney. According to the Commissioner, plaintiff answered their questions without routinely asking them to repeat themselves. (Tr. 30-57).

The ALJ also noted that plaintiff's activities supported a finding that he retained the ability to work. (Tr. 22). The Commissioner points out that the ALJ observed that plaintiff cared for his own personal needs, performed such household chores as taking out the trash, shopping for groceries, and preparing light meals. (Tr. 22, 46-48). As the ALJ noted, plaintiff also engaged in robust activities such as mowing over four acres of lawn. (Tr. 22, 47-48). Plaintiff had a driver's license and drove himself to the hearing. (Tr. 50). In a function report he submitted in 2007, plaintiff disclosed that he also shoveled the driveway and did household repairs. (Tr. 128). In fact, plaintiff explained that he moved in with his mother not because he needed her assistance but so that he could help her because his father had been injured in a motor vehicle accident. (Tr. 30-32). Thus, the Commissioner contends that the ALJ properly considered plaintiff's extensive activities in determining the intensity, persistence, and limiting effects of plaintiff's symptoms.

The Commissioner also argues that other evidence supports the ALJ's determination that plaintiff retained the ability to work. For example, plaintiff did not testify that he stopped working because of his impairments. To the contrary, he testified that he stopped working as a cashier and cash clerk only because his employer fired him for embezzlement. (Tr. 36). Plaintiff testified that he could still count cash drawers but for his having been fired. (Tr. 52). While he testified

that another employer fired him for not working quickly enough, plaintiff did not attribute that to any of his impairments.  (Tr. 37-38).  Again, the Commissioner points out that plaintiff testified that he stopped looking for work not because he felt that his impairments were too severe, but so he could help his mother after his father's accident.  (Tr. 39).  Thus, the Commissioner asserts that the ALJ correctly concluded that the tenor of plaintiff's testimony suggested that even he believed he could still perform his prior cash clerk (disbursement clerk) work.  (Tr. 22).  Thus, the Commissioner asks the Court to find that substantial evidence supports the ALJ's RFC finding as well as his conclusion that plaintiff could perform his past work.

The Commissioner also contends that the ALJ sufficiently accounted for plaintiff's hearing loss and asks the Court to reject plaintiff's argument that the ALJ should have recognized that plaintiff could not perform jobs that required use of a telephone or intercom.  According to the Commissioner, there are two problems with this argument.  First, it overlooks plaintiff's testimony that he could use a telephone.  While plaintiff testified that he had to turn the phone to speaker phone and hold it to his ear with the volume up, the fact remains that plaintiff regularly used his phone to speak to his daughter.  (Tr. 51).  Second, plaintiff erroneously assumes that the work that the ALJ found he could perform entailed use of a telephone or intercom.  This is not so because the ALJ found that plaintiff

could perform his past work as a cash or disbursement clerk "as the claimant had performed the work." (Tr. 23). Plaintiff, however, never testified that his work required any, let alone frequent, use of a telephone or intercom. To the contrary, plaintiff testified that he largely worked alone: "I was by myself and I didn't have to deal with anybody. The only time I dealt with anybody is when they came in and wanted a new drawer or something." (Tr. 43).

The Commissioner also argues that the ALJ's decision plainly reflects consideration of the effects of obesity on plaintiff's impairments, particularly his carpal tunnel syndrome, chronic obstructive pulmonary disease, Wolff-Parkinson-White syndrome, and hypertension. Specifically, the ALJ found that obesity was a severe impairment but found that it did not hinder the performance of basic work activities. (Tr. 20).

The Commissioner also suggests that the Court should reject plaintiff's other briefly mentioned arguments that the ALJ did not sufficiently account for plaintiff's propensity to drop objects because of carpal tunnel syndrome, made too much of plaintiff's daily activities, and did not adequately assess plaintiff's credibility. According to the Commissioner, the ALJ correctly found that plaintiff did not credibly describe the intensity, persistence, and limiting effects of his symptoms. (Tr. 22). While plaintiff claimed he dropped things and could not pick up small objects because of carpal tunnel syndrome, no objective medical

evidence documented this allegation.  The only testing indicated plaintiff had

near-normal grip strength.  According to the Commissioner, plaintiff's claim is all

the more incredulous given the scant and conservative treatment he received.  No

physician recommended treatment any more aggressive than taking Motrin.  Thus,

the ALJ reasonably determined that a lack of frequent and more than conservative

treatment – not just for carpal tunnel syndrome but for all his impairments –

reflected adversely on plaintiff's credibility.  Moreover, plaintiff's daily activities

were similarly relevant to the assessment of his credibility.  Performing such

activities as shoveling a driveway, driving, and mowing a large lawn with a riding

mower undermines plaintiff's testimony of  frequent dizzy spells and fatigue, as

well as difficulty grasping objects.  And, his regular use of a cell phone belied his

claim that his hearing loss prevented him from working even in an environment

free of loud noise.  The Commissioner contends that plaintiff's demonstrated

ability to perform a wide variety of activities undermined his claims of disabling

symptoms.  And the Commissioner also points out that plaintiff pled guilty to

attempted embezzlement – a crime of deceit.  (Tr. 36).  Based on the foregoing, the

Commissioner asserts that the ALJ had many reasons not to fully credit plaintiff's

claimed symptoms and limitations and the ALJ properly found that plaintiff could

perform a range of light work including his past work as a disbursement clerk.

III.   **DISCUSSION**

A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two: If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three: If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four: If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing 20

Report and Recommendation
Cross-Motions for Summary Judgment
*Ervin v. Comm'r*; Case No. 11-13776

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

Plaintiff's first objection is that the ALJ failed to fully accommodate his

severe hearing impairment. Plaintiff fails to explain how his hearing impacted his ability to perform his past work, which he performed with the same hearing impairment. Plaintiff worked until 2004. The severe hearing loss occurred in September 2000. Plaintiff does not explain why he could work from 2000-2004 with this hearing impairment, but not thereafter. *See e.g.*, *Munsey v. Astrue*, 2012 WL 2576644, *7 (E.D. Tenn. 2012) (ALJ properly concluded that plaintiff could perform work because he had done so in the past despite his hearing impairment.). Moreover, there is no evidence of any communicative impairment caused by plaintiff's hearing loss. He was able to communicate during the hearing with his amplifier, the consultative examiner noted that plaintiff did not have any trouble with conversations and missed few, if any words. Moreover, plaintiff testified that he was able to talk on the phone. The ALJ provided some accommodation of his hearing impairment by excluding "concentrated exposure to noise." Based on the VE's testimony, the ALJ concluded that plaintiff could perform his past work. In the view of the undersigned, plaintiff points to no evidence in the record to support his claim that he was unable to perform his past work or that his hearing impairment required additional accommodations. Significantly, plaintiff points to no expert opinions in the record, treating or otherwise, that imposed more restrictions than those found by the ALJ.

As to plaintiff's complaint that the ALJ did not properly consider his

2:11-cv-13776-LPZ-MJH   Doc # 17   Filed 08/30/12   Pg 21 of 25   Pg ID 332

obesity, the undersigned finds no basis to disturb the ALJ's decision.  Obesity, by itself of course, does not constitute a disability. SSR 02-1p.  Nonetheless, the condition must be considered in combination with other impairments in determining whether the claimant is disabled.  *Id.*  The administrative findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting from the condition.  *Coldiron v. Commissioner of Social Security*, 2010 WL 3199693, *7 (6th Cir. 2010), citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  Here, the ALJ expressly determined that plaintiff's obesity did not significantly hinder his ability to work or basic work activities such as sitting, standing, bending, reaching or manipulation.  Plaintiff points to no evidence in the record to support his claim that he was further limited by his obesity than as found by the ALJ.  Thus, the undersigned finds no basis to disturb the ALJ's findings on this basis.

As to the remainder of plaintiff's complaints that the ALJ failed to accommodate his various conditions, including COPD (which he denied having at the hearing), carpal tunnel, hypertension, or his heart condition, plaintiff points to no medical evidence of record to support his claim that these conditions were more limiting than as found by the ALJ.  Plaintiff appears to conclude that simply because he suffers from a certain condition or carries a certain diagnoses, he is disabled.  However, a diagnosis or condition does not equate to disability or a

particular RFC.  Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).  Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability.  The undersigned finds no basis to disturb the ALJ's findings in this regard.

Next, plaintiff claims that the ALJ did not properly assess his credibility. The undersigned disagrees.  Plaintiff has not overcome the considerable deference given to an ALJ's credibility determinations.  The ALJ cited a number of appropriate reasons for not fully crediting plaintiff's testimony: the lack of treatment, the conservative nature of the treatment, plaintiff's extensive activities of daily living, the apparent reason he stopped working was not because of any

impairment (but rather because he was fired for embezzlement), the inconsistency between his activities and his claimed impairments (using a phone despite his hearing impairment, performing extensive activities of daily living despite his carpal tunnel syndrome and dizzy spells), his apparent ability to work previously despite the existence of these impairments, and his conviction for a crime of deceit. For these reasons, the undersigned finds no basis to disturb the ALJ's credibility findings.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 30, 2012                      s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

Report and Recommendation
Cross-Motions for Summary Judgment
*Ervin v. Comm'r*; Case No. 11-13776

## <u>CERTIFICATE OF SERVICE</u>

     I certify that on August 30, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>David M. Stewart, William L. Woodard, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Ervin v. Comm'r*; Case No. 11-13776
